Filed 7/24/26  P. v. Garcia CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087041 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD301069) |
| v. | |
| DAVID GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore Weathers, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted David Garcia of criminal threats (Pen. Code[1] § 422).  The court sentenced Garcia to the low term of one year four months in prison.

Garcia filed a timely notice of appeal.

---

[1]     All statutory references are to the Penal Code.

Appellate counsel has filed a brief under the procedure establish by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende*. We offered Garcia the opportunity to file his own brief, but he has not responded.

STATEMENT OF FACTS

Counsel has submitted a helpful summary of the facts of the case. We will include the summary here for background purposes.

**"1. The Current Case**

"Appellant had been married to Jacqueline Fonseca's sister. He had lived with the family, but, by July 14, 2023, appellant and the sister were separated and appellant was living somewhere else. Appellant used to be in the military. '[F]or a minute,' Jacqueline's relationship with appellant was 'close.' Their relationship had 'a good start and then it got a little rough.' (4RT 760-762, 764, 800-801.)

"Jacqueline Fonseca testified that, on July 14, 2023, she was living in her parents['] house with them, her sister, and a cousin. On the night of July 14, 2023, Jacqueline, her parents, and Jacqueline's boyfriend, Nicholas Ladd-Flores, were at the house. Jacqueline's sister was not there. Jacqueline and Nicholas were in her room playing Jenga. (4RT 772-774, 808-809.) Around 10:00 p.m. to 12:00 midnight, Jacqueline heard the sound of 'stuff being thrown around' inside the house. Later, she saw that the screen to the window of her sister's room 'was ripped open.' (4RT 779-780.)

"Jacqueline and Nicholas heard loud noises from outside the house. A surveillance camera showed appellant outside the house. He was angry and

2

yelling about Jacqueline's sister. He was looking for her—"Yo where the fuck is this bitch at?" He appeared drunk. Jacqueline went to her parents' room "to let them know." The noises had subsided. At that point, "it was calm." Jacqueline and Nicholas went outside, but did not see anything. Appellant was not there. Her father was with them. (CT 90; 4RT 774-781, 801-802, 809.)

"At that time, the car alarm on Jacqueline's mother's car went off. A couple of minutes later, appellant returned from the direction where he usually parked his car. Appellant was '[a]ggressive, violent, yelling.' He was demanding to see the sister—'Oh, where is she?' Appellant was a couple of inches away from Jacqueline. She was scared. Nicholas was afraid that appellant would physically harm them. (4RT 780-783, 809-812.)

"Appellant, who 'seemed really violent,' moved close to Jacqueline's father. Jacqueline told appellant she was going to call the police. Appellant threatened her, '. . . saying that he was going to do something to me . . . that he had a knife in the car, he was going to bring it back before they came.' She thought appellant was going to stab her. Jacqueline knew that appellant kept knives in his car. Jacqueline was '[r]eally scared.' (4RT 783-785, 798-800, 803.)

"Jacqueline went into the house to get her phone. As she was coming back out, she saw appellant confronting and threatening her father over a car that appellant had borrowed. Appellant said, 'I am going to back with my fucking gun and all of you guys are fucking dead.' Jacqueline said, 'Stop! Stop!' (CT 92-97; 4RT 785-788.) Jacqueline called the police and explained what was happening. She said appellant was drunk. (4RT 790-794.)

"After making that statement, appellant walked away toward where he usually parked his car. As he did so, he reached into his back pocket or waistband. Jacqueline thought he might have been reaching for a knife. She was scared and afraid that appellant would kill her and her father. But, he did not come back. (4RT 771-772, 788-790, 802.)

"While Jacqueline and the others waited in the house for the police to arrive, she received a text message from appellant which contained a satellite view of where she worked. The text also contained expletives. The text made her more afraid. (4RT 794-796, 805.)

"Because appellant was not arrested on the day of the incident, Jacqueline was still afraid of him for 'days.' At trial, she was still afraid of him. (4RT 795-796.)

"During the incident, Jacqueline never saw appellant with a knife or a gun. He had never previously threatened her with a gun or knife or been violent with her in the past and did not touch her during the incident. She knew appellant had legal firearms that he kept in a locked box and that he collected knives. But, these facts did not make her any less scared of appellant. (4RT 796-798, 803.)

"Jacqueline claimed that, although appellant was drunk, he seemed to know what he was doing and saying. Apparently, he had driven there. (4 RT 803-804, 806.)

**"2. Prior, uncharged conduct**

"Sometime in January 2022, appellant was angry and brought out a gun. The police were called. They handcuffed appellant, 'arrested [him] for a little bit, but he was not taken.' He was drunk. The family wanted appellant to leave the house. (4RT 762-764.)

4

"In January 2023, after appellant and Jacqueline's sister separated, appellant got 'violent again.' He was inside the house 'throwing stuff around' and yelling about how 'life was not fair and this is too much.' The police were not called. While outside the house, appellant had been holding a gun. Jacqueline was scared. (4RT 764-766.)

"In June 2023, after hearing banging or knocking on the door, the family later checked and saw that the 'whole door was wrecked off.' They were suspicious and put up three Ring cameras around the house. Through an app, the cameras would notify Jacqueline when there was movement. (4RT 766-768.)"

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to independently review the record for error. To assist the court in its review and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*) counsel has identified two possible issues that were considered in evaluating the potential merits of this appeal: whether the judgment is supported by substantial evidence and whether the trial court erred in allowing evidence of uncharged acts.

We have independently reviewed the record for error as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Garcia in this appeal.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.*

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.